**In re HENRY F. RAAB, INC. and Domestic Fuel Corp., Debtors.**

**Bankruptcy Nos. 87 B 20003, 87 B 20004.**

United States Bankruptcy Court,
S.D. New York.

Feb. 10, 1988.

Aronwald & Pykett, White Plains, N.Y., for Angelo P. Rainaldi.

Greene & Zinner, White Plains, N.Y., for Borek, Stockel & Co.

McCarthy, Fingar, Donovan, Drazen & Smith, White Plains, N.Y., for Marine Midland Bank; William Macreery, of counsel.

DECISION ON ORDER TO SHOW CAUSE FOR ORDER MODIFYING ORDER OF SEPTEMBER 14, 1987

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Angelo Rainaldi ("Rainaldi"), a creditor of the debtor, Domestic Fuel Corp. ("Domestic"), and the current owner of all of the shares of the joint debtor, Henry F. Raab, Inc. ("Raab"), has moved for modification of this court's order dated September 14, 1987, which allowed the fees for the debtor's accountants to be paid from the estates of both debtors. Pursuant to this court's order dated May 18, 1987, and upon the applications of the debtors, Domestic and Raab, the accounting firm of Borek, Stockel & Company ("Borek, Stockel"), was appointed as accountants to provide services in connection with Domestic's adversary action to rescind its purchase of the stock of Raab and in opposition to Rainaldi's action to foreclose upon the Raab stock which was pledged by Domestic to collateralize its promissory note given for the purchase of the Raab stock from Rainaldi.

## FACTUAL BACKGROUND

1. On January 5, 1987, Domestic and Raab filed with this court separate voluntary petitions under Chapter 11 of the Bankruptcy Code and continued to operate their businesses and manage their properties as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108. Thereafter, an order was entered by this court pursuant to Bankruptcy Rule 1015 directing that the estates of both debtors be consolidated for purposes of joint administration. The debtors each had separate assets and separate creditors.

2. On June 25, 1985, Rainaldi, who was the owner of all of the Raab stock, entered into a stock purchase agreement with Domestic wherein Rainaldi sold all of his Raab stock to Domestic for $1,600,000. Domestic paid Rainaldi $600,000 at the closing. The balance of $1,000,000.00 to be paid in the equal monthly principal payments, together with interest. As security for the unpaid purchase price, Rainaldi was given a lien upon the Raab stock which was pledged by Domestic with Marine Midland Bank to secure the unpaid purchase price.

3. Domestic paid only the interest due under the first three notes and made no further payments after November 15, 1985. On January 18, 1987, Rainaldi moved in this court for relief from the automatic stay so that he might enforce his security interest in the pledged Raab stock. After a trial, this court found that Rainaldi's security interest in the pledged Raab stock was properly perfected and that he was not adequately protected. Accordingly, Rainaldi was granted relief from the automatic stay so that he could proceed with his foreclosure action. *Domestic Fuel Corp. v. Rainaldi, (In re Domestic Fuel Corp.),* 70 B.R. 455 (Bankr.S.D.N.Y.1987).

4. Meanwhile, Domestic commenced an adversary proceeding against Rainaldi to rescind the stock purchase agreement un-

der which Domestic purchased the Raab stock from Rainaldi. Rescission was sought by Domestic on the ground that the stock purchase agreement was entered into as a result of a mutual mistake or as a result of Domestic's mistake and Rainaldi's fraud. Alternatively, Domestic sought damages in the amount of $1,600,000 because of Rainaldi's alleged breach of warranties.

5. Rainaldi counterclaimed for a reclamation of the pledged Raab stock because of Domestic's failure to make payments in accordance with the purchase agreement.

6. After a trial, this court held that Domestic had not established that it was entitled to rescind the stock purchase agreement, whereas Rainaldi had established that he was entitled to recover the pledged Raab stock from the pledgee, Marine Midland Bank. *Domestic Fuel Corp. v. Rainaldi and Marine Midland Bank (In re Domestic Fuel Corp.)*, 79 B.R. 184 (Bankr.S.D.N.Y.1987).

7. An accountant employed by the Borek, Stockel accounting firm appeared at the trial and gave testimony in the capacity of an expert witness, in support of Domestic's position that the stock purchase agreement should be rescinded. A representative of Borek, Stockel was also required to appear at a deposition taken by Rainaldi's counsel, who sought to learn the basis for Borek, Stockel's conclusion that the Raab financial information relied upon by Domestic in purchasing the Raab stock from Rainaldi was incomplete or incorrect.

8. Rainaldi now owns the Raab stock and controls the Raab corporation which continues as a co-debtor in this case. He objects to having any assets of Raab applied toward the accounting fee to which Borek, Stockel is entitled, on the ground that Raab assets should not be used to finance the unsuccessful litigation which Domestic commenced against Rainaldi. In other words, Rainaldi should not be required to pay for his opponent's accounting fees for services which were used against him.

## DISCUSSION

The old English custom of requiring the victim to pay his executioner's fee is not the rule in this country. When Borek, Stockel was retained in the adversary action to substantiate Domestic's rescission claim against Rainaldi, it was manifest that whichever way the court decided, Rainaldi would end up owning the Raab stock. If Domestic succeeded in its rescission action, Rainaldi would have to take back the Raab stock and return the purchase price he received from Domestic. If Domestic lost the rescission action and Rainaldi succeeded in foreclosing upon the Raab stock as he did, Rainaldi would acquire possession of the Raab stock and would own the Raab corporation. Thus, in either event, Domestic would be relieved of its ownership and control of Raab and its assets. Hence, Borek, Stockel could not have contemplated relying on the Raab assets for payment of its accounting fees because regardless of the result of the litigation, Domestic would be the exclusive source for satisfying Borek, Stockel's fees. Raab is a co-debtor in this case only because Domestic owned the Raab stock when it filed its own Chapter 11 petition. Domestic then simultaneously filed a Chapter 11 petition for Raab, thereby staying Rainaldi from foreclosing on the pledged Raab stock after Domestic defaulted in paying Rainaldi for the Raab stock.

The order for joint administration of Domestic and Raab, entered in accordance with Bankruptcy Rule 1015(b), was in furtherance of administrative convenience in dealing with two related debtor corporations. Notices for the separate debtors were combined, notwithstanding that each debtor maintained separate assets and had different creditors. The accounting fees incurred by Domestic in an effort to rescind its stock purchase obligation in connection with Domestic's acquisition of the Raab stock inured solely to Domestic's benefit. The separate assets and creditors of Raab were not affected by this litigation and should not be required to assume any portion of the Borek, Stockel fees which were justifiably incurred for the sole benefit of Domestic.

In this instance, most of the expense incurred and effort expended by the creditor's two law firms resulted from the necessity to defeat the debtor's counterclaim. To that extent the expense was for the individual benefit of the creditor rather than the collective benefit of all creditors in the administration of this case. Under these circumstances, the expense, though a justifiable charge against [the specific creditor], is not a reasonable expense chargeable to this estate.

*In re J.V. Knitting Service, Inc.*, 22 B.R. 543 at 545 (Bankr.S.D.Fla.1982).

While the application for Borek, Stockel's retention was worded as a joint application, in that it states that Domestic and Raab, as debtors in possession, desire to employ Borek, Stockel as accountants, the purpose for such retention was solely for the benefit of Domestic's adversary litigation against Rainaldi. A single order was entered because both debtors' Chapter 11 cases were administered jointly and their counsel employed a joint order based upon the joint caption. Now that the two debtors have been separated by divided ownership, there is no reason why Rainaldi should pay for the services of his opponent's accountants in connection with the litigation in which he prevailed.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Rainaldi's motion for a modification of this court's order dated September 14, 1987, which allowed the fees of Borek, Stockel to be paid from the estates of both joint debtors is granted.

3. Rainaldi is entitled to an order directing that the fees of Borek, Stockel shall be paid solely from the estate of Domestic, because Domestic's counsel sought Borek, Stockel's accounting services in support of Domestic's litigation with Rainaldi, the present owner of all of the stock of the joint debtor, Raab. Such accounting services were of benefit to Domestic and not Raab.

SETTLE ORDER on notice.