**In re HENRY F. RAAB, INC., Domestic Fuel Corp., Debtors.**

**Bankruptcy Nos. 87 B 20003, 87 B 20004.**

United States Bankruptcy Court, S.D. New York.

April 11, 1988.

---

Robert B. Schindler, New York City, for Henry F. Raab.

Marc Stuart Goldberg, P.C., New York City, for debtor and debtor in possession.

Sitomer & Odessor, P.C., New York City, for debtors.

Aronwald & Pykett, White Plains, N.Y., for Angelo P. Rainaldi.

## DECISION ON PROFESSIONALS' FEE APPLICATIONS AND MOTION BY ANGELO RAINALDI AND HENRY F. RAAB OPPOSING APPLICATIONS AND SEEKING RETURN OF INTERIM COMPENSATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Pursuant to two orders of this court, dated February 2, 1987 and June 30, 1987, the law firms of Sitomer & Odessor, P.C. ("Sitomer") and Marc Stuart Goldberg, P.C. ("Goldberg") and accountants, Seidman and Seidman were retained, respectively, on behalf of the debtors, Domestic Fuel Corp. ("Domestic") and Henry F. Raab, Inc. ("Raab"). These professionals seek interim and final compensation, specifically from Raab, for pre- and post-petition services allegedly performed on behalf of both debtors. Raab and Angelo Rainaldi, a creditor of Domestic and the current owner of Raab, object to the granting of such compensation and seek a determination by this court that, if payment is considered timely, Domestic should be responsible for the payment of these administrative expenses and, additionally, any interim compensation paid in the past to these professionals from the Raab estate be returned to Raab.

## FACTUAL BACKGROUND

1. On January 5, 1987, Domestic and Raab filed with this court separate voluntary petitions under Chapter 11 of the Bankruptcy Code and continued to operate their businesses and manage their properties as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108. Thereafter, an order was entered by this court pursuant to Bankruptcy Rule 1015 directing that the estates of both debtors be consolidated for purposes of joint administration. The debtors each had separate assets and separate creditors.

2. On June 25, 1985, Rainaldi, who was the sole stockholder of Raab, entered into a stock-purchase agreement with Domestic wherein Rainaldi sold all of his stock to Domestic for $1,600,000. Domestic paid $600,000 at the closing and was to make monthly payments on the balance of the loan plus interest. As security for the unpaid purchase price, Rainaldi was given a lien upon the Raab stock which were pledged by Domestic with Marine Midland Bank to secure the unpaid purchase price.

3. Domestic paid only the interest due under the first three notes and made no further payments after November 15, 1985. On January 18, 1987, Rainaldi moved in this court for relief from the automatic stay in order to enforce his security interest in the pledged Raab stock. After a trial, this court found Rainaldi's security interest in the stock was properly perfected and that he was not adequately protected. Accordingly, Rainaldi was granted relief from the stay to proceed with his foreclosure action. *Domestic Fuel Corp. v. Rainaldi, (In re Domestic Fuel Corp.),* 70 B.R. 455 (Bankr.S.D.N.Y.1987).

4. By order of this court dated February 2, 1987 and June 30, 1987, the law firms of Sitomer and Drexler and Marc Stuart Goldberg and the accounting firms of Seidman and Seidman were retained, respectively, as corporate and litigation counsel and accountants to the debtors.

5. Meanwhile, Domestic commenced an adversary proceeding against Rainaldi to rescind the stock purchase agreement under which Domestic purchased the Raab stock from Rainaldi. Rescission was sought by Domestic on the ground that the stock purchase agreement was entered into as a result of mutual mistake or as a result of Domestic's mistake and Rainaldi's fraud.

6. Rainaldi counterclaimed for a reclamation of the pledged Raab stock because of Domestic's failure to make payments in accordance with the purchase agreement.

7. After a trial, this court held that Domestic had not established that it was entitled to rescind the stock purchase agreement, whereas Rainaldi had established that he was entitled to recover the pledged Raab stock from the pledgee, Marine Midland Bank. *Domestic Fuel Corp. v. Rainaldi and Marine Midland Bank, (In re Domestic Fuel Corp.),* 79 B.R. 184 (Bankr.S.D.N.Y.1987).

8. In February of 1987, the accounting firm of Borek, Stockel & Company made an application to this court for fees based upon an order of retention signed by this court on behalf of the debtors. After a hearing, this court held the services performed by Borek, Stockel were only to the benefit of Domestic's adversary litigation against Rainaldi and held Borek, Stockel may not seek compensation from the Raab estate. *In re Henry F. Raab and Domestic Fuel Corp.,* 82 B.R. 250 (Bankr.S.D.N.Y.1988).

9. Rainaldi now owns the Raab stock and controls the Raab corporation which continues as a co-debtor in this case. Both he and Raab object to the payment of administrative fees from the Raab estate asserting the work performed by the attorneys dealt with preparation for litigation in the above adversary proceeding and to defeat Rainaldi's asserted counterclaim in that proceeding. Additionally, Raab argues that some of the fees for which Sitomer and Odessor seek compensation were accrued pre-petition, and are not compensible, and that interim fees which have already been awarded to all the professionals and paid from the Raab estate be reimbursed to the estate because the fees resulted from work performed on behalf of Domestic in pursuit of its adversary proceeding against Rainaldi.

10. To date, Goldberg has received interim compensation from Raab, by order of this court dated September 23, 1987, in the amount of $11,691.75, together with incurred disbursements of $1182.68, and now seeks a final award from Raab of $5,772.50; Sitomer has received interim compensation from Raab by order of this court dated September 23, 1987, in the amount of $14,154.75, and now seeks final compensation from Raab in the amount of $1,000; Seidman & Seidman has not received any past award of interim compensation and now seeks interim compensation from Raab in the amount of $39,958.

## DISCUSSION

■ Sitomer and Goldberg were retained by order of this court to represent the debtors as their corporate and litigation counsel and Seidman was retained by this court to perform general accounting services for the debtors. Unlike the Borek, Stockel retention order, which stated that firm was appointed as accountants to provide services in connection with Domestic's adversary action to rescind its purchase of the stock of Raab and in opposition to Rainaldi's action to foreclose upon the Raab stock which was pledged by Domestic, Sitomer, Goldberg and Seidman were not retained specifically to perform services in connection with the Domestic/Rainaldi adversary action.

However, in reviewing the time sheets of all the professionals, it is apparent that a substantial amount of work performed involved preparation for the Domestic/Rainaldi adversary proceeding. These services only conferred a benefit upon Domestic, not upon Raab. The times sheet submitted by the professionals also indicate that all of them were aware that litigation was imminent and the results of such litigation could, and in fact, did result in Rainaldi's right to exert his security interest in the Raab stock. Accordingly, Domestic no longer owns Raab. Hence, just as Borek, Stockel, could not have contemplated relying on the Raab assets for payment of their respective fees for work that was not performed for the general administration of the debtors' estates or exclusively for the

benefit of Raab, Sitomer, Goldberg and Seidman also cannot claim such reliance. *In re Henry F. Raab and Domestic Fuel Corp.,* 82 B.R. at 252; *In re J.V. Knitting Service, Inc.,* 22 B.R. 543 (Bankr.Fla.1982).

Gary Langer, Esq., a former employee of Sitomer and Odessor, and the attorney who represented and appeared as Domestic's attorney in the adversary between Domestic and Rainaldi, filed an affidavit with this court disputing the allegations asserted by Rainaldi and Raab in their objections to Sitomer's application for fees.

First, Langer argues this court's decision dated February 10, 1988, regarding Borek, Stockel's fees, is inapplicable because Sitomer was hired as "corporate and litigation counsel", unlike Borek, Stockel, who was hired solely for the benefit of Domestic's adversary litigation against Rainaldi. This argument stresses form over substance. It is apparent from the time sheets submitted, and it is not denied Sitomer's attorneys, that they had knowledge of the litigation and knew that such litigation could result in Rainaldi obtaining the Raab stock from Domestic.

■ Second, Langer asserts that Raab makes bald assertions, without an offer of proof, that time spent by Sitomer resulted in services performed for the "Rainaldi litigation", thereby prohibiting compensation. However, Langer does *not* deny that the services referred to by Rainaldi were, in fact, performed to prepare and pursue the Rainaldi litigation or for other matters specifically performed on Domestic's behalf. Furthermore, the onus is not upon Raab to submit proof that the hours billed and submitted by Sitomer were *not* in furtherance of Raab matters. Where it is clear from the time sheet entries that work was performed for Domestic's benefit, be it for the Domestic/Rainaldi litigation or for the Surefire lease for Domestic, or where the time sheets are ambiguous, Sitomer may not seek compensation from Raab. It is Sitomer's burden to prove, by documentation or testimony, that the services performed were on behalf of the debtor from whom they seek compensation.

7

Third, Langer argues that Rainaldi's objection to the hours billed by Sitomer regarding services performed for discovery and other services in opposing Rainaldi's motion seeking relief from the automatic stay to enforce his security interest is misleading. Langer states the work performed was necessary to establish that Rainaldi's security interest was adequately protected by the existing and recoverable assets of Raab and therefore, the efforts in discovery were performed on behalf of Raab. Although work was performed that required discovery to evaluate the assets of Raab's assets and liabilities, this does not mean the work was performed for Raab. Rainaldi is a creditor of Domestic. Any services performed to protect Domestic from Rainaldi's enforcement of his security interest were performed on behalf of Domestic. The Raab stock was still in Domestic's possession at the time of the motion for relief from the stay. It is conceivable that the Raab assets could be used to demonstrate a secured party is adequately protected, but such a valuation was clearly on behalf of Domestic.

Daniel J. Sitomer, Esq., a partner at Sitomer & Odessor, also submitted an affidavit disputing other objections by Rainaldi levied at his firm.

■ First, Mr. Sitomer argues that Rainaldi's objection to compensation for pre-petition services is unjustified because the services performed were necessary for the filing of the petitions in Bankruptcy for both debtors. Mr. Sitomer asserts that an extensive amount of work was done for both of the debtors. The Sitomer firm may have performed work on behalf of both debtors, but it is not entitled to be compensated because the retention order signed by this court on February 2, 1987 did not allow Sitomer compensation, *nunc pro tunc*, for pre-petition services.

■ Second, Mr. Sitomer objects to Raab's claim that the $10,000 pre-petition retainer fee paid to Sitomer should be returned to the Raab estate. Mr. Sitomer states that the management of both debtors realized that Domestic did not have adequate funds to pay the retainer, where-as Raab was in a much better financial position and could better sustain the monetary burden. He then states that "Domestic's officers and board of directors approved the advance by Raab of $10,000 to Domestic in order for Domestic to aid in its rehabilitation." Mr. Sitomer asserts Raab's proper remedy would be to recover the $10,000 advance from Domestic in another proceeding. This court agrees that Raab, as a creditor of Domestic, should proceed against Domestic for the $10,000 advance and that Sitomer may retain this retainer fee.

■ Regarding Goldberg's fee application, Goldberg asserts that services for which he seeks compensation were performed on behalf of Raab. No objections have been filed with regard to Marc Stuart Goldberg's application claiming work performed by him was not performed on behalf of Raab. However, the Bankruptcy court retains the discretion of approving or rejecting attorney fees. Accordingly, to the extent that work was performed, and hours billed, regarding Rainaldi's motion for relief from the automatic stay to enforce his security interest in the Raab stock, this work was performed on behalf of Domestic. Rainaldi is a creditor of Domestic. Although it is the Raab stock that is being sought by Rainaldi, any action by Goldberg in responding to this motion and any benefit derived by Goldberg's action, would enure only to Domestic. Therefore, any compensation for such services must be paid, if reasonable, by Domestic. To the extent that Mr. Goldberg performed administrative tasks in compliance with his order of retention signed by this court, Goldberg is entitled to compensation for services performed on Raab's behalf up to the date that Robert Schindler replaced Goldberg as Raab's counsel. Additionally, as with Sitomer, Mr. Goldberg also received a pre-petition retainer of $10,000. If Rainaldi seeks the return of this $10,000 his relief would lie in a proceeding against Domestic.

■ Regarding Seidman's fee application, it is also apparent that it knew of the pending litigation between Domestic and Rainaldi. In fact, many of the time entries indicate meetings with Borek, Stockel, the

accountants hired to perform work for the Domestic/Rainaldi litigation, and whose representative appeared as an expert witness for Domestic. Therefore, to the extent that work performed to only enure to Domestic's benefit, compensation may not be sought from Raab. Raab asserts that Seidman should not be entitled to any compensation because the work was performed to prepare schedules for the debtors which were never filed in this court. The filing of schedules is within the discretion and is the responsibility of the debtors' attorneys. Because the debtors' attorneys failed to file schedules does not justify penalizing Seidman for services performed pursuant to this court's order of retention.

## CONCLUSIONS OF LAW

(1) Accordingly, based upon the above findings, Sitomer is not entitled to any compensation from the Raab estate. Goldberg has received past compensation for fees and disbursements in the amount of $23,-374.43. This court finds that the time sheets reflect services performed on behalf of Raab in the amount of $25,826.35 which entitles Goldberg to compensation from the Raab estate in the amount of $2451.92. Seidman is entitled to compensation for services for and from the Raab estate in the amount of $5,810.

(2) Both Sitomer and Goldberg have already received approval by this court and disbursements from Raab for interim compensation. Raab has requested that this court direct Goldberg and Sitomer to return any funds paid by the Raab estate. Goldberg's services exceed past compensation paid, however, Sitomer is directed to return any monies received from the Raab estate as a result of receiving interim compensation by order of this court which exceeds the $10,000 retainer it received pre-petition. This return of monies to Raab will not prejudice either firm from seeking compensation for these services from Domestic.

SETTLE ORDER on notice in accordance with the above findings of fact and conclusions of law.